IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **PABLO ESTRADA**, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Case No. **04-434-MJR** |
| **WILLIAM HAMBY, et al.**, | ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

Defendants Tammy Yates[1], Sheila Simpson, William Hamby, Julie Cochrane, Linda Runge, Gina Harris, Margaret Holmes, Nancy Beaty, Nancy Puckett and Wexford Health Sources, Inc., are before the Court moving for summary judgment. **(Doc. 195).** This Report and Recommendation is respectfully submitted to United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

## The Amended Complaint

Plaintiff Pablo Estrada, who is an inmate in the custody of the Illinois Department of Corrections, alleges that his constitutional rights were violated in numerous ways while he was incarcerated at Big Muddy River Correctional Center between February 1998 and April 2004. **(Doc. 64).** Plaintiff filed the amended complaint himself, but the Court has since appointed counsel to represent plaintiff. In relevant part, the amended complaint alleges the following:

---

[1]Defendant Yates is represented by attorney David Walter, who filed the subject motion. The motion is not filed in Yates's name, but arguments for summary judgment regarding Yates are presented. Therefore, this Court construes the motion as being filed on behalf of Yates.

1

Count 1: Defendant Dr. William Hamby was deliberately indifferent to plaintiff's need for surgery to repair a hernia;

Count 2: Defendant Sheila Simpson failed to protect plaintiff from harm by his wheelchair pusher;

Count 4: Defendant Linda Runge was deliberately indifferent to plaintiff's ear infection, failing to treat the infection and providing him with the wrong medication, to which he was allergic;

Count 5: Defendants Tammy Yates, Julie Cochrane, Gina Harris, Margaret Holmes, Nancy Beaty and Nancy Puckett retaliated against plaintiff for filing grievances by making plaintiff last in the medication and insulin line(s), and by directing correctional officers to file false disciplinary reports against plaintiff; and

Count 8: Defendant Wexford Health Sources, Inc., was deliberately indifferent to plaintiff's serious medical needs by failing to provide necessary medical treatment, because their medical staff were not properly trained.

**(Docs. 64 and 64-2; *see also* Doc. 216, p. 2; and Doc. 195, p. 2).**

## The Issues Presented

Defendants Tammy Yates, Sheila Simpson, William Hamby, Julie Cochrane, Linda Runge, Gina Harris, Margaret Holmes, Nancy Beaty, Nancy Puckett and Wexford Health Sources, Inc., make the following arguments for summary judgment:

1. Defendant Sheila Simpson was not acting under color of law;

2. Plaintiff's claims against defendants Dr. William Hamby and Linda Runge amount to no more than a disagreement over treatment; in any event, medical negligence does not rise to the level of deliberate indifference;

3. There is no evidence of a policy or practice upon which to find defendant Wexford Health Sources liable;

4. Defendant nurses Tammy Yates, Julie Cochrane, Gina Harris, Margaret Holmes, Nancy Beaty, Nancy Puckett have no involvement in the order in which inmates are seen in the insulin and/or medication lines;

5. Only defendants Yates and Holmes were involved in issuing disciplinary reports

to plaintiff, and those reports would have been issued regardless of any retaliatory motive;

6. The defendants are entitled to qualified immunity; and

7. All claims regarding events prior to April 13, 2002, are barred by the statute of limitations.

**(Doc. 195).**

Plaintiff filed a response[2], to which the defendants replied. **(Docs. 215 and 218).** The parties' points and counterpoints will be addressed within the analysis of each argument for summary judgment.

## Standard for Summary Judgment

Summary judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56(c);** *Celotex Corp. v. Catrett,* **477 U.S. 317, 322 (1986).** The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Wollin v. Gondert,* **192 F.3d 616, 621-622 (7th Cir. 1999).** The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Fortis Ins. Co.,* **200 F.3d 1055, 1057 (7th Cir. 2000);** *Baron v. City of Highland Park,* **195 F.3d 333, 337-338 (7th Cir. 1999).** In response to a motion for summary judgment, the nonmovant may not

---

[2]Plaintiff's motion makes reference to desiring more time for discovery. At the time counsel was appointed to represent plaintiff, the discovery period had closed– after two years in which to conduct discovery. Plaintiff and his attorney were granted additional time to file a response to the motion for summary judgment, and a second extension was also granted. **(Docs. 206, 209 and 214).**

simply rest on the allegations as stated in the pleadings. Rather, the nonmovant must show through specific evidence that an issue of fact remains on matters for which the nonmovant bears the burden of proof at trial. **Walker v. Shansky,** **28 F.3d 666, 670-671 (7th Cir. 1994),** *aff'd,* **51 F.3d 276 (citing** *Celotex,* **477 U.S. at 324).**

No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986) (citations omitted);** *accord* **Starzenski v. City of Elkhart, 87 F.3d 872, 880 (7th Cir. 1996); Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994).** "[P]laintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment." **Weeks v. Samsung Heavy Industries Co., Ltd., 126 F.3d 926, 939 (7th Cir. 1997).** In other words, summary judgment may not be averted merely by the non-moving party "baldly contesting his adversary's factual allegations," but instead, the plaintiff must come forth with probative evidence to substantiate the allegations of the complaint. **Oates v. Discovery Zone, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing** *First Nat'l Bank of Arizona v. Cities Serv. Co.,* **391 U.S. 253, 290 (1968);** *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* **475 U.S. 574, 586 (1986)).**

## Analysis

**Count 2 and Defendant Simpson**

Count 2 alleges that defendant Sheila Simpson, a staff assistant in the health care unit, failed to protect him from harm at the hands of his wheelchair pusher, inmate Clopton, despite plaintiff telling Simpson in advance that Clopton was going to cause him serious harm. Clopton eventually rammed plaintiff and his wheelchair into a closed door, injuring plaintiff.

There is a general duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan,* **511 U.S. 825, 833-834 (1994).** In order for the plaintiff to prevail on a "failure to protect" claim, he must show that he was incarcerated under conditions posing a substantial risk of serious harm, and also that the defendant acted with "deliberate indifference" to that danger. *Id.; Reed v. McBride,* **178 F.3d 849, 852 (7th Cir. 1999).** As in all constitutional claims under 42 U.S.C. § 1983, the plaintiff must establish not only that he was "deprived of a right secured by the Constitution or laws of the United States, but also that the alleged deprivation was committed under color of state law." *American Manufacturers Mutual Insurance Co., v. Sullivan,* **526 U.S. 40, 49-50 (1999);** *Case v. Milewski,* **327 F.3d 564, 566 (7th Cir. 2003).**

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, **487 U.S. 42, 49 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)).** "[S]tate employment is generally sufficient to render the defendant a state actor." *West*, **487 U.S. at 49.** However, *Payton v. Rush-Presbyterian-St. Luke's Medical Center,* 184 F.3d 623, 628 (7th Cir.

1999), observed that a private party can be deemed to have acted under color of state law when the state either: (1) "effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision;" or (2) "delegates a public function to a private entity."

*West* held that a contract physician providing medical care to a prisoner was acting under color of law. The Supreme Court stated, "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. *West* at 55-56. The high court noted that the physician had assumed an obligation to the mission that the state, through the institution, attempts to achieve. *Id*. at 51. However, it was also noted that the state may place relevant limits on the contract employee. *Id*. at 56, n. 15.

Defendant Simpson's affidavit indicates that she was employed by Wexford Health Sources and functioned in an administrative capacity within the healthcare unit at the prison. **(Doc. 195-13).** Therefore, her job appears to be in aid of the state's custodial/supervisory function. However, Simpson does not address her abilities and/or obligations to report threats of harm, nor does she mention any restrictions on her power to act to aid plaintiff, which are likely determinative of liability. Therefore, there is insufficient information to adequately analyze this specific issue and Simpson's function in the prison system vis a vis threats of inmate violence.

Similarly, there is insufficient information before the Court for a proper analysis of defendant Simpson's assertion that there is no evidence that establishes an Eighth Amendment violation. According to defendant Simpson's affidavit, to the best of her knowledge, plaintiff never complained about his wheelchair pusher in advance of the incident, and she did not

perceive any danger or risk of harm. **(Doc. 195-13, p. 2).** However, plaintiff's affidavit states that he informed Simpson that his wheelchair pusher had threatened to dump him from his wheelchair. **(Doc. 216-2, p. 2).** These material issues of fact will have to be decided by the trier of fact.

### Count 1 and Defendant Dr. Hamby

Count 1 alleges that defendant Dr. William Hamby was deliberately indifferent to plaintiff's need for surgery to repair a hernia. In *Estelle v. Gamble,* 429 U.S. 97(1976), the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty upon states to provide adequate medical care to incarcerated individuals. *See id.* at 103; *see also Walker v. Benjamin,* **293 F.3d 1030, 1036-1037 (7th Cir. 2002).** However, an inmate is not entitled to demand specific care, nor is he entitled to the best care available. *Forbes v. Edgar,* **112 F.3d 262, 267 (7th Cir. 1997).** To create a violation by failing to provide medical care, there must be "deliberate indifference" to a substantial risk of harm. *Sherrod v. Lingle,* **223 F.3d 605, 610 (7th Cir. 2000) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).** This standard erects two high hurdles which every inmate-plaintiff must clear. *Dunigan v. Winnebago County,* **165 F.3d 587, 590 (7th Cir. 1999).** The plaintiff must show: (1) the medical condition was objectively serious; and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard. *Sherrod,* **223 F.3d at 610.**

A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Gutierrez v. Peters,* **111 F.3d 1364, 1373**

7

**(7th Cir. 1997).** "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v. Snyder*, **546 F.3d 516, 522 (7th Cir. 2008).**

To show deliberate indifference, a plaintiff must establish that the prison official "was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health. *Perkins v. Lawson,* **312 F.3d 872, 875 (7th Cir. 2002) (citing *Wynn v. Southward,* 251 F.3d 588 (7th Cir. 2001)).** The Court of Appeals for the Seventh Circuit has said that deliberate indifference requires a showing of more than mere negligence (or even gross negligence) but less than purposeful infliction of harm. *Woodward v. Correctional Medical Services of Illinois, Inc.,* **368 F.3d 917, 926-927 (7th Cir. 2004) (citing *Matos ex rel. Matos v. O'Sullivan,* 335 F.3d 553, 557 (7th Cir. 2003); *Perkins,* 312 F.3d at 875.**

As a preliminary matter, it is noted that plaintiff is confined to a wheelchair. **(Doc. 195-8, p. 15).** Plaintiff had hernia repair on his right side in 1995. **(Doc. 195-8, pp. 2-3).** In March 2003, plaintiff complained to Nurse Practitioner Runge about what he characterized as a hernia, but Runge found no hernia. **(Doc. 195-9, pp. 9-10).** Plaintiff again complained of a growing hernia with pinching pain in January 2004. **(Doc. 195-11, pp. 12-13; Doc. 195-30, p. 8).** Medical notes on that same date, which appear to have been made by Dr. Hamby, do not reflect an examination or treatment for the alleged hernia or related symptoms. **(Doc. 195-30, p. 9).** It appears that medical personnel at Big Muddy River Correctional Center never diagnosed plaintiff as having a new or reoccurring hernia during the relevant time period; therefore, plaintiff was not treated for a hernia. **(*See* Docs. 195-8– 195-11 (Affidavit of Dr. Hamby and summary of medical records)).**

As a general principle, a hernia qualifies as an objectively serious medical condition, even though certain hernias may be conservatively treated. *See Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006) (categorizing hernias and the corresponding standard treatment). Dr. Hamby contends that plaintiff has failed offer any substantiation of his claimed hernia. In his affidavit, plaintiff states that Dr. Hamby himself advised plaintiff that he thought plaintiff had a hernia, although plaintiff was purportedly only examined in a seated position in his wheelchair. **(Doc. 215-2, p. 2).** Obviously, plaintiff is implying that Dr. Hamby failed to make the appropriate notations in the medical record. In contrast, Dr. Hamby observes that plaintiff was examined by numerous doctors and health care professionals and no one recorded that plaintiff had a hernia.

Summary judgment may not be averted by plaintiff just "baldly contesting his adversary's factual allegations;" instead, the plaintiff must come forth with probative evidence to substantiate the allegations of the complaint. *Oates v. Discovery Zone,* 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Plaintiff has failed to come forth with any evidence to substantiate his claimed hernia. Debating Dr. Hamby's veracity is, alone, insufficient to establish the actual existence of a hernia. However, plaintiff notes that the general allegation that Dr. Hamby failed to treat his surgery encompasses the related symptoms: nausea, vomiting and pain, which also went untreated. (*See* **Doc. 64, pp. 6-12; Doc. 215-2, pp. 1-2; and Doc. 195-30, p. 8).** Even if plaintiff cannot substantiate a specific hernia diagnosis, his symptoms alone, and without a medical diagnosis, may be sufficient, but material questions of fact remain which preclude summary judgement. For example, depending

9

on the frequency of plaintiff's vomiting, vomiting can constitute a serious medical need (*see Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)), while isolated instances are insufficient (*see Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000)). The fact that it appears that no treatment or no meaningful evaluation and treatment may have been offered by Dr. Hamby circumvents the defendant's assertion that all that is before the Court is a difference of opinion about the proper treatment. Therefore, Count 1 against Dr. Hamby must proceed to trial.

### Count 4 and Defendant Linda Runge

Count 4 alleges that Linda Runge, a nurse practitioner, was deliberately indifferent to plaintiff's ear infection, failing to treat the infection and providing him with the wrong medication, to which he was allergic. The same standards for liability apply that are set forth above relative to Count 1 and Dr. Hamby and will not be repeated here. Defendant Runge argues that this claim amounts to no more than a disagreement over treatment; in any event, medical negligence does not rise to the level of deliberate indifference.

It is apparently undisputed that Dr. Mann, an ear, nose and throat specialist, and treating physicians at the prison, dictated that the proper treatment for plaintiff's ear condition (for which a tube had been inserted) was Debrox, which is what Nurse Runge gave plaintiff. **(Doc. 195-25, pp. 7-8).** However, plaintiff maintains that his claim is that when Nurse Runge was told that the Debrox was causing an allergic reaction and pain, no alternative treatment was offered. **(Doc. 217, pp. 13-14).**

A review of the record reveals that plaintiff initially saw Nurse Runge on March 10, 2003, at which time the Debrox was dispensed and plaintiff was scheduled to see a physician.

**(Doc. 195-25, pp. 7-8).** Although the medical notes do not reflect any complaint of pain, plaintiff sates in his affidavit that he complained of pain. **(Doc. 215-2, p. 5).** Plaintiff saw Nurse Beaty five days later relative to his left ear; no notation of pain is made. **(Doc. 195-25, p. 9).** On March 20, 2003, plaintiff was examined by a physician who noted the use of Debrox since March 5th and examined plaintiff's left ear, which was noted as painful. **(Doc. 195-25, p. 10).** The doctor indicated a consultation with another doctor was in order, and perhaps an audiogram, but nothing different was prescribed. **(Doc. 195-26, p. 1).** The next day, the antibiotic Augmentin was prescribed. **(Doc. 195-26, p. 1).** Dr. Hamby subsequently saw plaintiff on April 1, 2003, and noted that plaintiff was still having ear pain, but again only an antibiotic was prescribed. **(Doc. 195-26, p. 7).**

A question of material fact exists regarding whether plaintiff even reported ear pain to Nurse Runge on March 10, 2003. Furthermore, Nurse Runge's affidavit does not address her authority to issue any pain medication, or to diverge from prescribed treatment. Although Nurse Runge did schedule plaintiff to see a physician, which weighs against a finding of deliberate indifference, the unnecessary and wanton infliction of pain can constitute a serious medical need. ***See Hayes v. Snyder*, 546 F.3d 516, 522-523 (7th Cir. 2008).** Therefore, material questions of fact remain which preclude summary judgment regarding Count 4 and Nurse Runge.

### **Count 8 and Defendant Wexford Health Sources, Inc.**

In a situation such as this, where a corporation is providing medical services on behalf of

the state, the corporation can be liable for deliberate indifference only if it had a policy or practice that caused the violation. ***Woodward v. Correctional Medical Services of Illinois, Inc., 368 F.3d 917, 927 (7th Cir. 2004).*** Defendant Wexford Health Sources, Inc., argues that there is no evidence of a policy or practice upon which to find liable relative to Count 8. Wexford's argument on this point is sparse, really just an assertion. (*See* **Doc. 195, p. 17).** Nevertheless, it seems to have merit.

Count 8 alleges that Wexford was deliberately indifferent to plaintiff's serious medical needs by failing to provide necessary medical treatment, because their medical staff were not properly trained. Plaintiff attributes the failure to train to Wexford's efforts to save money on its contract with the state to provide medical services. **(Doc. 64-2, p. 15).** Plaintiff's affidavit contains references to cost considerations relative to whether medical treatment would be provided **(Doc. 215-2, pp. 2 and 4),** but he does not make mention of Wexford's failure to train its personnel, or any policy or practice regarding training. There is actually no evidence before the Court regarding staff training or qualifications, let alone any evidence linking cost considerations to training.

This Court perceives that an allegation of a failure to train, or a corporate practice or policy regarding the training or qualifications of staff, is distinctly different from an allegation that treatment decisions were made for purposes of cost containment to the detriment of patient care. Therefore, this Court finds that plaintiff has failed to offer any evidence whatsoever to support the allegations against Wexford Health Sources in Count 8, thereby warranting summary judgment in Wexford's favor.

**Count 5 and Defendants Yates, Cochrane, Harris, Holmes, Beaty and Puckett**

12

Count 5 alleges that the defendant nurses, Tammy Yates, Julie Cochrane, Gina Harris, Margaret Holmes, Nancy Beaty, Nancy Puckett retaliated against plaintiff for filing grievances by making plaintiff last in the medication and insulin line(s), and by directing correctional officers to file false disciplinary reports against plaintiff. The defendants contend plaintiff cannot establish his retaliation claim because:

    (a)    None of the nurses were involved in determining the order in which inmates were taken to the medication and/or insulin lines, which was determined by correctional staff; and

    (b)    Plaintiff was issued disciplinary tickets from only two of the defendant nurses, Yates and Holmes, and those reports would have been issued regardless of plaintiff's history of grievances.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. ***See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).** To establish a First Amendment claim of retaliation for exercising free speech, an inmate must allege a chronology of events from which retaliation can be inferred, and prove both that his grievances were the motivating factor behind the defendant's conduct, and that things would have transpired differently absent the retaliatory motive. ***Hasan v. Department of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).**

Plaintiff argues that the defendants' own affidavits reflect that the alphabetical system "generally" utilized for medication lines is not always used, and that although there may be some

13

legitimate reasons for plaintiff being last sometimes, if plaintiff is made last out of retaliation, there is a constitutional violation. **(*See* Doc. 216, p. 16; and Doc. 195-21, p. 2).** Although plaintiff is correct, and questions of fact do remain regarding how the line was run, there is uncontradicted evidence that *some* of the defendant nurses were not involved in any manner in determining the way the medication lines were run.

*Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983), stresses that "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a [Section] 1983 action unless he caused or participated in an alleged constitutional deprivation." *See also McBride v. Soos*, **679 F.2d 1223, 1227 (7th Cir.1982).** Therefore, regardless of whether there were improprieties in how the medication lines were run, unless the defendant nurses were personally involved, no liability can attach. Plaintiff does not address this point. Although nurses Tammy Yates, Julie Cochrane, Gina Harris, Margaret Holmes, Nancy Beaty, Nancy Puckett all submitted affidavits indicating that they did not have any involvement in determining the order inmates were seen in the medication lines, only the affidavits of defendants Yates, Cochrane, Beaty and Puckett were signed. **(Docs. 195-16– 195-21).** Therefore, only Yates, Cochrane, Beaty and Puckett are entitled to summary judgment on the medication line aspect of Count 5.

Although nurses Harris and Holmes did not sign their affidavits, there is also no evidence whatsoever of a causal link between *any* of the nurses and those individuals who did determine the order inmates were taken for medication. Plaintiff's affidavit indicates that it is merely his "belief" that the nurses directed prison staff running the medication lines to put plaintiff last in

14

line.³ **(Doc. 215-2, p. 3).** Therefore, by his own admission, plaintiff's whole claim of retaliation relative to the medical lines is premised only on a belief, unsupported by any evidence. Therefore, this Court recommends that all of the defendant nurses be granted summary judgment relative to the medical line aspect of Count 5.

With respect to the alleged retaliatory issuance of disciplinary tickets, there is evidence in the record that plaintiff received seven disciplinary reports while housed at Big Muddy River Correctional Center. **(Doc. 184-8, pp. 5-6).** Nurse Yates issued two reports, and Nurse Holmes issued one report. **(Doc. 184-8, pp. 5-6).** Plaintiff's allegations that other disciplinary tickets were issued by prison staff at the direction of the nurses is not specifically addresses by the defendant nurses. In any event, as plaintiff notes, an act taken by prison officials in retaliation for an inmate's exercise of his First Amendment rights may form the basis of a civil rights suit, even if the same act, when taken for a different reason, would be permissible. ***See Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7ᵗʰ Cir. 1988);** *Harris v. Fleming,* **839 F.2d 1232, 1237-1238 (7ᵗʰ Cir. 1988);** *Murphy v. Lane,* **833 F.2d 106, 108-109 (7ᵗʰ Cir. 1987).** Therefore, material questions of fact remain regarding the tickets issued to plaintiff and what role if any each of the defendant nurses in the issuance of the disciplinary tickets. Therefore, none of the defendant nurses should be granted summary judgment on this aspect of Count 5.

**Qualified Immunity**

---

³Plaintiff's affidavit reflects that on January 25, 2003, CO Hanks told him he was to be last in line "per nurse on insulin line." **(Doc. 215-2, p. 4).** However, plaintiff does nothing to link any of the defendant nurses to that comment.

15

The defendants argue that, if any constitutional violations are found, they are entitled to qualified immunity because their actions violated no clearly established constitutional rights. Qualified immunity shields officers from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).**

The defendants do not question the basic legal principles underlying Counts 1, 2, 4, 5 and 8 which have been set forth above. Rather, the defendants are arguing that the factual scenarios at issue in this action fall outside of those prescribed parameters for liability. Because material issue of fact remain relative to determining liability, it is impossible to assess whether qualified immunity may be appropriate. The defendants should renew their argument at the appropriate time during trial.

**The Statute of Limitations**

The defendants assert, without reference to any particular count of the amended complaint, that the limitations period has expired for any claims plaintiff knew or should have known of more than two years prior to the initiation of this action. The general statute of limitations for Section 1983 actions arising in Illinois is two years. *See Johnson v. Supreme Court of Illinois,* **165 F.3d 1140, 1141 (7th Cir. 1999).**

Plaintiff filed his complaint in the Northern District of Illinois on April 13, 2004. **(See Doc. 1 and *Estrada v. Hamby*, Case No. 04-C-2643, Doc. 1 (N.D. Ill. April 13, 2004)).** Accordingly, April 13, 2002 – two years prior to the filing date– would appear to be the crucial date. The Court of Appeals for the Seventh Circuit has observed that "Judges are not like pigs,

16

hunting for truffles buried in briefs"(*U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)), therefore, this Court will not comb the pleadings and evidence searching for matters that fall outside the limitations period. With that said, this Court does observe that none of plaintiff's claims appears to specifically pertain to events before the relevant date. However, one of plaintiff's seven disciplinary tickets was issued far outside of the relevant cutoff. The July 6, 2000, disciplinary ticket issued by Dietary Worker Doty clearly cannot form the basis for any liability in this case.

### Recommendation

For the aforestated reasons, it is this Court's recommendation that the motion for summary judgment filed by defendants Tammy Yates, Sheila Simpson, William Hamby, Julie Cochrane, Linda Runge, Gina Harris, Margaret Holmes, Nancy Beaty, Nancy Puckett and Wexford Health Sources, Inc., **(Doc. 195)** be granted in part and denied in part. More specifically if this Court's recommendations are adopted in full:

1. Defendant Wexford Health Sources, Inc., should be granted summary judgment on the sole claim against it, Count 8 (this would terminate defendant Wexford);

2. Defendant nurses Tammy Yates, Julie Cochrane, Gina Harris, Margaret Holmes, Nancy Beaty, Nancy Puckett should all be granted summary judgment relative to the medical line aspect of Count 5 (they remain defendants with respect to all other aspects of Count 5);

3. Plaintiff should be precluded from basing any liability in Count 5 relative to the July 6, 2000, disciplinary ticket issued by Dietary Worker Doty; and

4. Defendants Tammy Yates, Sheila Simpson, William Hamby, Julie Cochrane, Linda Runge, Gina Harris, Margaret Holmes, Nancy Beaty, Nancy Puckett's motion for summary judgment should be denied in all other respects, leaving Counts 1, 2, 4 and the remainder of Count 5 (regarding disciplinary tickets) to proceed to trial.

**DATED: February 10, 2009**

                                              <u>s/ Clifford J. Proud</u>
                                              **CLIFFORD J. PROUD**
                                              **U. S. MAGISTRATE JUDGE**

## <u>Notice of Response Deadline</u>

      In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **February 28, 2009**. No extensions will be granted.